**No. 25-1369**

---

**IN THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

---

**ROBERT J. MACLEAN,**

*Petitioner*,

v.

**DEPARTMENT OF HOMELAND SECURITY,**

*Respondent.*

On Petition for Review
from the Merit Systems Review Board
Docket No. DC-1221-20-0235-W-2

---

# UNOPPOSED BRIEF OF *AMICI CURIAE* GOVERNMENT ACCOUNTABILITY PROJECT, FLYERSRIGHTS, NATIONAL SECURITY COUNSELORS, PUBLIC EMPLOYEES FOR ENVIRONMENTAL RESPONSIBILITY, PROJECT ON GOVERNMENT OVERSIGHT, AND WHISTLEBLOWERS OF AMERICA IN SUPPORT OF PETITIONER ROBERT MACLEAN AND REVERSAL

---

Originally Filed: June 4, 2025
Corrected: June 23, 2025

Elisabeth R. Connell
Government Accountability Project
1612 K Street NW, Suite 808
Washington, DC 20006
(202) 449-6040
elisabethc@whistleblower.org

Counsel of Record for *Amici Curiae*

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 25-1369

**Short Case Caption** MacLean v. DHS

**Filing Party/Entity** Government Accountability Project

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 06/04/2025

Signature: /s/ Elisabeth R. Connell

Name: Elisabeth R. Connell

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| Government Accountability Project | | |
| FlyersRights | | |
| National Security Counselors | | |
| Public Employees for Environmental Responsibility | | |
| Project on Government Oversight | | |
| Whistleblowers of America | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☐ No ☑ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

**DISCLOSURE STATEMENT PURSUANT TO FED. R. APP. P. 29(a)(4)(A)**

Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(A), undersigned counsel for *amici curiae* hereby certifies that *amici* do not have any parent corporations, and no publicly held company holds 10% or more of the stock or ownership interest in the *amici*.

## TABLE OF CONTENTS

**Page**


DISCLOSURE STATEMENT PURSUANT TO FED. R. APP. P. 29(a)(4)(A) ..... i

TABLE OF AUTHORITIES ..... iii

STATEMENT OF IDENTITY, INTEREST, AND AUTHORITY OF *AMICI* TO FILE PURSUANT TO FED. R. APP. P. 29(a)(4)(D) AND 29(a)(4)(E) ..... 1

SUMMARY OF ARGUMENT ..... 4

ARGUMENT ..... 6

I. The Board erroneously accepted legally protected whistleblowing as an independent justification to terminate MacLean ..... 8

A. Legally protected speech cannot serve as an independent justification to terminate a whistleblower ..... 8

B. MacLean's allegedly disrespectful conduct was legally protected speech ..... 10

II. The Board erroneously accepted prohibited personnel practices as independent justification to terminate Mr. MacLean ..... 13

III. The Board erroneously failed to adequately consider the existence and strength of the agency's motive to retaliate in their entirety ..... 15

A. The Board erred by failing to address the existence of the agency's full motives to retaliate ..... 17

B. The Board erred by failing to consider the strength of the agency's motives ..... 19

CONCLUSION ..... 24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Carr v. Soc. Sec. Admin.*,
185 F.3d 1318 (Fed. Cir. 1999) .................................................... 7, 9, 13, 15, 16

*Chambers v. Dep't of Interior,*
602 F.3d 1370 (Fed. Cir. 2010) ....................................................................8

*Cleveland Bd. of Educ. v. Loudermill*,
470 U.S. 532 (1985) ...................................................................................15

*Delgado v. U.S. Dep't of Just.*,
979 F.3d 550 (7th Cir. 2020) .......................................................................8

*Dep't of Homeland Sec. v. MacLean*,
574 U.S. 383 (2015) ................................................................................2, 17

*Greenspan v. Dep't of Veterans Affairs,*
464 F.3d 1297 (Fed. Cir. 2006) ..................................................8, 10, 11

*MacLean v. Dep't of Homeland Sec.,*
714 F.3d 1301 (Fed. Cir. 2013) ....................................................................1

*Miller v. Dept. of Just.*,
842 F.3d 1252 (Fed. Cir. 2016) ............................................................ 7, 16, 22

*Russell v. Dep't of Just.*,
76 M.S.P.R. 317 (1997)..............................................................................20

*Siler v. Env't Prot. Agency,*
908 F.3d 1291 (Fed. Cir. 2018) ..................................................................8, 9

*Smith v. Gen. Servs. Admin.,*
930 F.3d 1359 (Fed. Cir. 2019) .......................................................... *passim*

*Sullivan v. Dep't of the Navy*,
720 F.2d 1266 (Fed. Cir. 1983) ....................................................................9

*Whitmore v. Dept. of Lab.*,
680 F.3d 1353 (Fed. Cir. 2012) ............................................................ 16, 19

*Young v. Dep't of Homeland Sec.*,
No. DE-1221-18-0335-W-2, 2024 WL 5074870
(M.S.P.B. Dec. 10, 2024) ..........................................................................9, 22

**Statutes & Other Authorities:**

5 U.S.C. § 1213 .......... 17

5 U.S.C. § 1213(g) .......... 12

5 U.S.C. § 1221(e)(1) .......... 6

5 U.S.C. § 2302(a)(2)(A)(xii) .......... 14

5 U.S.C. § 2302(b) .......... 11

5 U.S.C. § 2302(b)(8) .......... 4, 6, 10

5 U.S.C. § 2302(b)(9)(A)(i) .......... 15

5 U.S.C. § 2302(b)(12) .......... 15

5 U.S.C. § 2302(b)(13) .......... 5, 14

Fed. R. App. P. 29(a)(4)(D) .......... 1

Fed. R. App. P. 29(a)(4)(E) .......... 1

*Examining Misconduct and Retaliation at TSA: Hearing before the H. Comm. On Oversight and Gov't Reform*, 115th Cong. (2018) .......... 13

Gov't Accountability Project, *Referral for OSC Disclosure,* Sep. 20, 2023, https://osc.gov/Documents/Public%20Files/FY25/DI-16-2046/DI-16-2046%20-%20Comments.pdf. .......... 17

Robert MacLean, *Response to DHS/TSA Response Reports*, Dec. 18, 2018, https://osc.gov/Documents/Public%20Files/FY25/DI-18-5205/DI-19-0778%20-%20Comments.pdf. .......... 18

Press Release, U.S. Office of Special Counsel, *Review of Airline Safety Allegations* (Jan. 15, 2025), https://osc.gov/News/Pages/25-17-airline-safety-disclosures.aspx .......... 18

Press Release, Transp. Sec. Admin., *TSA Report in Response to Lack of Unlocked Flightdeck Protection, Secondary Barriers and Inward-Opening Doors* (Oct. 11, 2018), https://osc.gov/Documents/Public%20Files/FY25/DI-16-2046/DI-16-2046%20-%20DHS%20Report.pdf .......... 18

Press Release, U.S. Dep't of Transp., *Report for Lack of Unlocked Flightdeck Protections* (July 13, 2020), https://osc.gov/Documents/Public%20Files/FY25/DI-16-2046/DI-16-2046%20-%20DOT%20Report.pdf .......... 18

Press Release, *U.S. Dep't of Transp., Report on Refusal to Equip Flightdecks with Naloxone for Pilots' Access* (Nov. 14, 2023), https://osc.gov/Documents/Public%20Files/FY25/DI-18-5205/DI-18-5205%20-%20DOT%20Report%20-%20Part%20A.pdf ........................................................18

U.S. Dep't of Transp., *Report on Airline Safety Disclosures*, Nov. 14, 2023, https://osc.gov/Documents/Public%20Files/FY25/DI-18-5205/DI-18-5205%20-%20DOT%20Report%20-%20Part%20B.pdf........................................................18

U.S. Office of Special Counsel, *TSA Supplemental Information*, Apr. 26, 2021, https://osc.gov/Documents/Public%20Files/FY25/DI-18-5205/DI-18-5205%20and%20DI-19-0778%20-%20DHS%20Report.pdf .................................18

**STATEMENT OF IDENTITY, INTEREST, AND AUTHORITY OF *AMICI* TO FILE PURSUANT TO FED. R. APP. P. 29(a)(4)(D) AND 29(a)(4)(E)**

Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(D), undersigned counsel for *amici* hereby certifies that all parties have consented to the filing of this brief.

Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), undersigned counsel for *amici* hereby certifies that no party, counsel, person, or entity other than *amici* and their counsel contributed money to fund the preparation or submission of this brief, or authored this brief, in whole or in part.

***Amicus* the Government Accountability Project ("GAP")** is an independent, nonpartisan, nonprofit public interest law firm that promotes corporate and government accountability by protecting whistleblowers and advancing free speech in the civilian and governmental workforce. Founded in 1977, GAP is the nation's oldest organization dedicated to the legal rights of whistleblowers. GAP advocates for effective implementation of whistleblower protections throughout industry, international institutions, and the federal government. GAP has unique expertise as a leader in advocacy, drafting and oversight of nearly all federal laws protecting whistleblowers.

When Petitioner Robert J. MacLean ("Petitioner" or "MacLean") challenged his 2006 termination, GAP served as co-counsel in his successful appeal before this Court and, subsequently, before the Supreme Court. *MacLean v. Dep't of*

*Homeland Sec.,* 714 F.3d 1301 (Fed. Cir. 2013) (rehearing en banc denied); *Dep't of Homeland Sec. v. MacLean,* 574 U.S. 383 (2015). Additionally, GAP was part of the legal team representing Petitioner during the administrative stage of the instant case.

***Amicus* FlyersRights,** founded in 2007, is the largest nonprofit organization dedicated to advocating for air safety and the rights and interests of airline passengers. It operates a free, nationwide hotline (877-FLYERS-6) to assist travelers with air travel issues. FlyersRights.org also represents the flying public on the FAA's Aviation Rulemaking Advisory Committee, where it champions stronger air safety regulations and fair treatment for all passengers.

***Amicus* National Security Counselors ("NSC")** is a non-profit public interest law firm which specializes, in pertinent part, in national security employment law, including whistleblower protection. As such, it regularly represents whistleblowers in all stages of the administrative process and federal litigation. NSC believes that the efficacy of federal whistleblower protections can only be maintained if the tribunals interpreting and affirming those protections faithfully adhere to both the letter and the spirit of the law.

***Amicus* Public Employees for Environmental Responsibility ("PEER")** is a national non-profit, public interest organization. PEER advocates on behalf of public employees in environmental and public health fields such as public land

management, pollution control, toxic chemicals, wildlife protection, and historic preservation. PEER represents federal employees in whistleblower proceedings under the Whistleblower Protection Act, as amended, before the Merit Systems Protection Board and federal courts. PEER also engages in advocacy for strong whistleblower protections generally.

***Amicus*** **Project on Government Oversight ("POGO")** is a nonpartisan independent watchdog that investigates and exposes waste, corruption, abuse of power. POGO champions reforms to achieve a more effective, ethical, and accountable federal government that safeguards constitutional principles. Working with whistleblowers for such purposes is an integral part of POGO's mission, and ensuring strong whistleblower protections is one of POGO's core policy priorities.

***Amicus*** **Whistleblowers of America ("WoA")** is a voluntary peer support network. WOA concentrates on whistleblower mental health through a trauma-informed approach and assists employees suffering the psychosocial impacts of whistleblower retaliation. Founded in 2017, WOA provides support, advocacy, resources and referrals to a global network of employees and advocates and has provided support to over 1,050 individuals in over 30 countries.

## SUMMARY OF ARGUMENT

If upheld, the November 2024 decision by the Merit Systems Protection Board ("MSPB" or "Board") in the proceedings below would effectively gut core provisions of the Whistleblower Protection Act ("WPA") and overturn decades of related caselaw recognizing agencies' congressionally mandated burden to defend, by clear and convincing evidence, adverse personnel actions once a *prima facie* case of retaliation has been proven. Appx226.

The Board arrived at its erroneous holding in this case by imposing de facto "good taste" and "nonrepetitive" standards for legally protected speech. That violates the Whistleblower Protection Act's ("WPA") requirement to protect "any" disclosure evidencing a reasonable belief of listed misconduct. 5 U.S.C. § 2302(b)(8). It also violates this Court's mandate in *Whitmore v. Department of Labor*, that what matters is the merits, not the manners. *Whitmore v. Dept. of Lab.*, 680 F.3d 1353, 1370 (Fed. Cir. 2012). In this case, Petitioner had a reasonable belief that he was communicating misconduct covered by the Act, and that this belief was, in fact, widely shared and expressed by his peers.

The Board further held that it was misconduct for MacLean to contact witnesses who might support him against a proposed personnel action, because MacLean violated a Nondisclosure Agreement ("NDA") he signed after his initial interview by TSA Office of Inspection/Investigations (TSA-OOI). Appx230,

Appx236. However, the NDA's text and 5 U.S.C. § 2302(b)(13) shielded MacLean's efforts to defend himself as protected activity. As a result, attempting to enforce the NDA beyond its lawful scope violated the Whistleblower Protection Act. It also violated his constitutional due process rights. In the end, it was error for the Board to allow protected speech as well as prohibited personnel practices to be valid "independent" grounds the agency would have taken to terminate an employee in the absence of whistleblowing.

Equally significant, the Board erred by turning a fundamental factor for independent justification – motive to retaliate – into an inconsequential checklist item that weighed only "marginally" in MacLean's favor. In doing so, the Board failed to comprehensively review the record as a whole, a requirement consistently applied by this Court in *Whitmore* and subsequent decisions. As a result, the Board failed to consider probative evidence that the agency had been obsessively trying to purge MacLean in reprisal for a career spent holding the agency publicly accountable, including (1) his exposure of embarrassing, but improper widespread sexual misconduct (i.e., quid pro quo) among Department of Homeland Security ("DHS") / Transportation Security Administration ("TSA" or "agency") middle and upper management; (2) four U.S. Office of Special Counsel ("OSC") orders to investigate the agency's failure to correct post-9/11 vulnerabilities to terrorism that MacLean had reported and the OSC found were "substantially likely"; and (3) his

2015 Supreme Court victory. Indeed, the Board barely recognized any instances of MacLean's protected activity that sparked a non-stop, nearly two-year nightmare of orders for an irresponsibly dangerous mission, removal of all duties, psychiatric referral, and serial retaliatory investigations until his 2019 removal, among other harassment.

## ARGUMENT

No genuine dispute exists as to whether Petitioner has established a *prima facia* case that his 2019 termination violated the anti-retaliation provisions of the WPA. 5 U.S.C. § 2302(b)(8). The issue, rather, is whether DHS has sufficiently shown, *by clear and convincing evidence*, that it would have taken the same personnel actions against Petitioner absent his legally protected whistleblowing. 5 U.S.C. § 1221(e)(1). On multiple occasions, this Court has reaffirmed the propriety of requiring the government to meet a heightened evidentiary standard, explaining that Congress deemed it necessary given agencies' inherent advantages over individual complainants:

> First, this burden of proof comes into play only if the employee has established by a preponderance of the evidence that the whistleblowing was a contributing factor in the action—in other words, that the agency action was "tainted." Second, this heightened burden of proof required of the agency also recognizes that when it comes to proving the basis for an agency's decision, the agency controls most of the cards—the drafting of the documents supporting the decision, the

> drafting of the documents supporting the decision, the testimony of witnesses who participated in the decision, and the records that could document whether similar personnel actions have been taken in other cases. In these circumstances, it is entirely appropriate that the agency bear a heavy burden to justify its actions.

*Miller v. Dept. of Just.*, 842 F.3d 1252, 1258 (Fed. Cir. 2016) (citing *Whitmore* 680 F.3d at 1367).

Whether an agency has cleared the "clear and convincing" evidentiary hurdle, meanwhile, depends on three factors originally promulgated by this Court in *Carr v. Social Security Administration*:

> [1] the strength of the agency's evidence in support of its personnel action; [2] the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; [3] and any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated.

*Carr v. Soc. Sec. Admin.*, 185 F.3d 1318, 1323 (Fed. Cir. 1999).

The law also is clear that the material, conflicting evidence from both sides must be addressed:

> Whether evidence is sufficiently clear and convincing to carry this burden of proof cannot be evaluated by looking only at the evidence that supports the conclusion reached. Evidence only clearly and convincingly supports a conclusion when it does so in the aggregate considering all the pertinent evidence in the record, and despite the evidence that fairly detracts from that conclusion.

*Delgado v. U.S. Dep't of Just.*, 979 F.3d 550, 561 (7th Cir. 2020) (quoting *Whitmore*, 680 F.3d at 1368). In *Whitmore* this Court emphasized, "[a]ny determination by [the Board] that is based on findings made in the abstract and independent of the evidence which fairly detracts from [its] conclusions is unreasonable and, as such, is not supported by substantial evidence." *Whitmore,* 680 F.3d at 1376.

This doctrine applies in cases even where there is substantial evidence the employee engaged in disrespectful conduct. *Smith v. Gen. Servs. Admin.,* 930 F.3d 1359, 1365–67 (Fed. Cir. 2019). As seen below, the Board's decision ignores these doctrines, so it is not supported by substantial evidence.

## I. <u>The Board erroneously accepted legally protected whistleblowing as an independent justification to terminate MacLean.</u>

### *A. Legally protected speech cannot serve as an independent justification to terminate a whistleblower.*

It is well-established that legally protected speech cannot be an independent justification for personnel actions. As this Court explained in *Chambers v. Department of Interior*, when a charge is based on a protected disclosure, "the charge cannot stand [. . . ]. Discipline may not be based on a disclosure protected by the Whistleblower Protection Act," *Chambers v. Dep't of Interior,* 602 F.3d 1370, 1379–80 (Fed. Cir. 2010) (citing *Greenspan v. Dep't of Veterans Affairs,* 464 F.3d 1297, 1305 (Fed. Cir. 2006)). In *Siler v. EPA*, this Court further explained that

"in an adverse action proceeding, . . . the merits cannot be the determinative factor that there was no reprisal. *A meritorious adverse action must be set aside where there is reprisal.*" *Siler v. Env't Prot. Agency,* 908 F.3d 1291, 1298–99 (Fed. Cir. 2018) (quoting *Sullivan v. Dep't of the Navy*, 720 F.2d 1266, 1278 (Fed. Cir. 1983) (Nies, J., concurring)).

In *Smith* this Court explained,

> Contrary to the Board's statement, the merits of a whistleblower defense do not turn on the strength of the agency's evidence alone or on whether the misconduct justified removal. Those points speak to whether the agency met its burden to prove that misconduct occurred, discipline is warranted, and the chosen penalty is reasonable, factors the agency must show by preponderant evidence in every appeal from a disciplinary action. Where whistleblowing is at issue, however, the proper inquiry is not whether the agency action is justified; it is whether the agency would have acted in the same way absent the whistleblowing.

*Smith,* 930 F.3d at 1359 (citations omitted). In *Whitmore*, this Court applied that principle in a case involving physical violence. *Whitmore,* 680 F.3d at 1365. In other proceedings, the Board has respected this doctrine as well. *Young v. Dep't of Homeland Sec.*, No. DE-1221-18-0335-W-2, 2024 WL 5074870, at ** 12–13 (M.S.P.B. Dec. 10, 2024).

Of course, legally protected whistleblowing cannot provide impunity for an employee. However, it cannot be the basis for an agency to prevail under *Carr* factor one. For nearly two decades under *Carr* factor one, this Court has required

the Board to segregate that issue and only rely on evidence independent of whistleblowing. *Greenspan,* 464 F.3d at 1304. Here, the Board relied on it.

*B. MacLean's allegedly disrespectful conduct was legally protected speech.*

The primary charge against MacLean is that, among other analogous disclosures, he shared a post in a private chat group that inferred an improper affair between an unnamed TSA employee and their supervisor. Appx21. While the Board conceded Petitioner may have had a reasonable belief, it rejected his speech as protected because it was based on unreliable rumors, was repeated by MacLean more than other employees, and failed to prove a quid pro quo from the alleged misconduct. Appx231.

Significantly, none of these explanations contest that an improper affair occurred. The WPA does not contain any repetition or bad taste loopholes. Regardless of whether whistleblowing is socially "appropriate," its protected status must be respected. In *Whitmore*, *supra*, the protected speech was associated with violence; MacLean's speech did not.

Nor does the law require that the whistleblower use the best citation or select the right form of misconduct listed in § 2302(b)(8), if the disclosure is relevant to any of the protected speech categories. Here, the Board did not cite any authority that the scope of MacLean'sit said he had not proved despite the law's requirement only to have protected speech was limited to evidence of a *quid pro quo*, which it

said he had not proved despite the law's requirement only to have a reasonable belief for relevant evidence.

Regardless of whether the protected speech was disrespectful and disruptive or not, the Board must fully consider the material evidence for both sides of the story, especially in a case involving disruptive conduct. In *Greenspan*, this Court considered a case where the employee had been accused of defamatory, unfounded, derogatory, inappropriate and disrespectful conduct. *Greenspan*, 464 F.3d at 1304. However, there was no evidence that the employee lacked a reasonable belief, and peers shared his concerns. This Court reiterated that the WPA protects "any" disclosure the employee reasonably believes is evidence of misconduct listed in the law's categories. *Id.*

Mr. MacLean engaged in protected speech based on a "reasonable belief" of WPA misconduct. The term is defined in 5 U.S.C. § 2302(b), under view:

> [A] determination as to whether an employee or applicant reasonably believes that such employee or applicant has disclosed information that evidences any violation of law, rule, regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety shall be made by determining whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee or applicant could reasonably conclude that the actions of the Government evidence such violations, mismanagement, waste, abuse, or danger.

It is not in dispute that numerous peers agreed with MacLean. Appx55.

The only issue, then, is whether quid pro quo sexual affairs between employees and supervisors qualify as misconduct covered by the statute. Yet, the board denied that disclosure of this affair was protected, dismissing MacLean's statements as "inappropriate comments" Appx235.

However, highly persuasive authorities—that the Board ignored—disagree. In 2010, the U.S. Office of Special Counsel ("OSC") found that MacLean had a reasonable belief for those same concerns and that they were covered by the WPA. Accordingly, the OSC ordered an investigation under 5 U.S.C. § 1213(g) in which both TSA-OOI and DHS Office of Inspector General (DHS-OIG) investigators interviewed witnesses throughout the nation. Appx31.[1]

Indeed, in October 2015 the agency delayed renewal of MacLean's security clearance adjudication partly for analogous disclosures of the same sexual affair as communicated on Facebook, which he challenged under Presidential Policy Directive 19 (PPD-19). In response, the DHS-OIG reopened its 2010 case and investigated MacLean's complaint that he was being retaliated against for protected speech. The case was not closed until his clearance was renewed. Appx137. In short, the same issues already have been accepted and acted on as protected speech by two independent agencies.

[1] MacLean was not informed of the investigation's results, and the AJ denied his discovery request for a copy of the relevant Report of Investigation. Appx242.

The House Committee on Oversight and Government Reform also disagreed that learning about and acting on evidence of widespread agency sexual misconduct was "inappropriate" or otherwise improper. On September 26, 2018, the Committee issued a report finding widespread mismanagement and abuse of authority at TSA due to sexual misconduct ranging from harassment to improper affairs. *Examining Misconduct and Retaliation at TSA: Hearing before the H. Comm. On Oversight and Gov't Reform*, 115th Cong. (2018). It could only issue that report after numerous disclosures from TSA employees disclosing anecdotes similar to MacLean. Numerous peers also shared analogous concerns with Congress.

Meanwhile the Board failed to consider the consequences of the misconduct MacLean disclosed. The Board did not recognize the OSC findings, which were in the record, nor a dispositive prior security clearance action, nor the deep congressional concerns over TSA patterns of sexual misconduct. In fact, the Board did not recognize the existence of any of the evidence supporting MacLean's whistleblowing about sexual misconduct. The Board's assessment of *Carr* factor one is thus not supported by substantial evidence.

## II. The Board erroneously accepted prohibited personnel practices as independent justification to terminate Mr. MacLean.

The Board also approved the charge against MacLean the Board alleging that he violated a Nondisclosure Agreement ("NDA") by contacting witnesses to

help defend against the private chat investigation. Appx60, Appx236, Appx241-242. Through its internal investigation, the agency aggressively sought to obtain witness testimony supporting this charge from 20 different employees. Appx194-195. The Board ignored, however, that the Whistleblower Protection Act and the NDA itself protected MacLean's actions, and proposing to terminate him for trying to defend himself is a prohibited personnel practice.

5 U.S.C. § 2302(b)(13) makes it a prohibited personnel practice to:

> implement or enforce any nondisclosure policy, form, or agreement, if such policy, form, or agreement [. . .] does not contain the following statement: "These provisions are consistent with and do not supersede, conflict with, or otherwise alter the employee obligations, rights, or liabilities created by existing statute or Executive order relating to (1) classified information, (2) communications to Congress, (3) the reporting to an Inspector General or the Office of Special Counsel of a violation of any law, rule, or regulation, or mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety, or (4) any other whistleblower protection. The definitions, requirements, obligations, rights, sanctions, and liabilities created by controlling Executive orders and statutory provisions are incorporated into this agreement and are controlling."

*Id.* The NDA at issue included this legally required addendum. Appx161.

MacLean's contact with witnesses to help prepare his defense was protected activity explicitly shielded by this prohibited personnel practice and the NDA itself. Attacking him for it was yet another prohibited personnel practice, not meritorious independent grounds for termination. Under 5 U.S.C. § 2302(a)(2)(A)(xii), the "implementation or enforcement of any nondisclosure

policy, form, or agreement" is a personnel action. 5 U.S.C. § 2302(b)(9)(A)(i) makes it a prohibited personnel practice to take a personnel action because of "the exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation [. . .] with regard to remedying a violation of paragraph (8)." MacLean's efforts to defend himself against whistleblower retaliation are the point of this prohibited personnel practice.

Most fundamentally, the right to seek evidence against perceived retaliation is essential for a free society. MacLean also had a constitutional due process right for that defense. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). Under 5 U.S.C. § 2302(b)(12), violations of constitutional rights are another prohibited personnel practice.

In short, Mr. MacLean had every right under the merit system and the Constitution to defend himself. Evidence obtained from a prohibited personnel practices to help terminate a whistleblower not only must be barred from consideration of *Carr* factor one but considered as significant additional evidence of retaliation.

## III. **The Board erroneously failed to adequately consider the existence and strength of the agency's motive to retaliate in their entirety.**

As referenced above, *Carr* factor two requires the agency to consider "the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision… ." *Carr*, 185 F.2d at 1323. The

motive can be institutional rather than personal if the disclosure reflects adversely on agency leadership. *Whitmore*, 680 F.3d at 1371; *Miller*, 842 F.3d at 1261–62. The requirement to fully consider both sides of the evidence is essential for assessing motives. Citing *Whitmore*, this Court emphasized in *Smith*, 930 F.3d at 1365, "[T]he Board cannot ignore record evidence relevant to the existence and strength of any motive to retaliate or the treatment of similar employees. Rather, the Board must 'provide an in-depth review and full discussion of the facts to explain its reasoning.'"

Here the Board recognized the existence of an institutional motive to retaliate but failed to discuss the evidence presented for its scope or intensity. It concluded that investigations to gather evidence against MacLean were justified by various employee complaints. Appx235, Appx239.

That reasoning says nothing about retaliatory motive. It ignores this Court's guidance in *Smith*, 930 F.3d at 1365, that the issue "is not whether the agency action is justified; it is whether the agency would have acted in the same way absent the whistleblowing." The Board's analysis of *Carr* factor two did not address why the agency had a motive to retaliate or the strength of its efforts. As a result, the decision is not supported by substantial evidence.

*A. The Board erred by failing to address the existence of the agency's full motives to retaliate.*

The Board's discussion essentially limited this action to a whistleblower retaliation case about challenging a sexual affair. That protected speech was negligible compared to the rest of MacLean's protected activity. In December 2015, after struggling for nearly a decade, MacLean defeated the agency's earlier attempt at removal when the Supreme Court backed him in its first and only WPA decision. *Dep't of Homeland Sec. v. MacLean*, 574 U.S. 383 (2015). This was an unprecedented humiliation for the agency.

Just over two months after his Supreme Court victory, on February 16, 2016, Mr. MacLean provided further motive to retaliate as he began exercising WPA rights under 5 U.S.C. § 1213 to make new disclosures to OSC. The Special Counsel found a substantial likelihood that he was correct and ordered investigations into the following allegations:

- Failure to install secondary barriers between unlocked flightdecks and potential terrorists;[2]
- Failure to replace inward opening doors to the unlocked flightdeck that enable terrorist attacks;[3]

---

[2] Gov't Accountability Project, *Referral for OSC Disclosure*, Sep. 20, 2023, https://osc.gov/Documents/Public%20Files/FY25/DI-16-2046/DI-16-2046%20-%20Comments.pdf.

[3] *Id.*

- Failure to inspect airline religious food catering trucks as vehicles to smuggle terrorists or weapons;[4]
- Failure to supply FAMs' individual first aid kits and the inside of flightdecks with naloxone/NARCAN antidotes to neutralize deadly aerosolized carfentanil attacks from aerosol sprays that circumvent checkpoint detection.[5]

Appx79-90.

These whistleblowing disclosures forced TSA to conduct initial and reopened investigations for seven years until the OSC permitted closure.[6] It would

---

[4] Robert MacLean, *Response to DHS/TSA Response Reports*, Dec. 18, 2018, https://osc.gov/Documents/Public%20Files/FY25/DI-18-5205/DI-19-0778%20-%20Comments.pdf.

[5] *Id.*

[6] Press Release, U.S. Office of Special Counsel, *Review of Airline Safety Allegations* (Jan. 15, 2025), https://osc.gov/News/Pages/25-17-airline-safety-disclosures.aspx; Press Release, Transp. Sec. Admin., *TSA Report in Response to Lack of Unlocked Flightdeck Protection, Secondary Barriers and Inward-Opening Doors* (Oct. 11, 2018), https://osc.gov/Documents/Public%20Files/FY25/DI-16-2046/DI-16-2046/DI-16-2046%20-%20DHS%20Report.pdf; Press Release, U.S. Dep't of Transp., *Report for Lack of Unlocked Flightdeck Protections* (July 13, 2020), https://osc.gov/Documents/Public%20Files/FY25/DI-16-2046/DI-16-2046%20-%20DOT%20Report.pdf; Press Release, U.S. Dep't of Transp., *Report on Refusal to Equip Flightdecks with Naloxone for Pilots' Access* (Nov. 14, 2023), https://osc.gov/Documents/Public%20Files/FY25/DI-18-5205/DI-18-5205%20-%20DOT%20Report%20-%20Part%20A.pdf; U.S. Dep't of Transp., *Report on Airline Safety Disclosures* (Nov. 14, 2023), https://osc.gov/Documents/Public%20Files/FY25/DI-18-5205/DI-18-5205%20-%20DOT%20Report%20-%20Part%20B.pdf; U.S. Office of Special Counsel, *TSA Supplemental Information* (Apr. 26, 2021), https://osc.gov/Documents/Public%20Files/FY25/DI-18-5205/DI-18-5205%20and%20DI-19-0778%20-%20DHS%20Report.pdf.

be an understatement to say that they gave the agency a significant motive to retaliate. No other whistleblower in history had caused so much trouble for the agency due to legally protected speech under the WPA.

In *Smith*, 930 F.3d at 1365, this Court rejected a Board decision, in part because the whistleblower "made a number of disclosures, most of which the Board failed to address." In this case, the Board decision failed to mention any of the above protected activity.

*B. The Board erred by failing to consider the strength of the agency's motives.*

By not considering the existence of specific motives, the Board inherently ignored their strength. As a result, the decision is not supported by substantial evidence.

In addition, however, strength can be demonstrated by an agency creating a hostile work environment. In *Whitmore*, 680 F.3d at 1375, where disruptive behavior was more severe, this Court instructed that it was error not to consider evidence that the employer created a systematically hostile work environment which may in part have caused employee aberrant behavior, and then opened an aggressive retaliatory investigation to see if the effects would support termination. That is exactly what happened here.

As discussed earlier, Mr. MacLean immediately was subject to sustained,

extreme harassment upon his return to the agency. By its deeds, the agency exposed the intensive strength of its motive to retaliate. OSC investigated and in some cases obtained informal corrective action, such as when the agency assigned him to a dangerous "covert" mission that was impossible for Maclean as a well-recognized public figure whose whistleblowing had thwarted another planned Al Qaeda's July 2003 attack. Appx14. When the assignment was withdrawn after OSC intervention, the agency assigned Mr. MacLean to an empty room without work. Appx168. The agency ordered him to take a psychiatric examination. Appx138. The Board did not address any of this and similar, ongoing harassment, which defined MacLean's professional environment. During nearly all this time stress from the hostile environment was magnified, because MacLean also had to defend himself against a series of almost nonstop retaliatory investigations.

The one issue the Board addressed was whether a retaliatory investigation produced the evidence against MacLean. The issue is even more significant than assessing the strength for a retaliatory motive. It has long been established that a personnel action violates the WPA if its evidence comes from a retaliatory investigation caused by protected speech. *Russell v. Dep't of Just.*, 76 M.S.P.R. 317, 323–24 (1997).

The Board only addressed the last of five serial investigations the agency

opened on MacLean beginning 6 months after his return to the agency and simultaneous with his OSC whistleblowing disclosures, all which MacLean charged were retaliatory.[7] The first and last two, which could not find any actionable misconduct, are unrebutted as evidence of a strong retaliatory intent.

The Board found that the second investigation which produced removal charges was not retaliatory, because numerous employees had made complaints about MacLean. Further, the Board contended that the motives of the employee reporting the private chat group were not relevant, since she did not have authority for personnel actions. Appx233, Appx239-240, Appx242-243.

These explanations cannot withstand scrutiny. It is undeniably relevant whether any of the complainants against MacLean were motivated by or the targets of protected conduct that obtained corrective action. MacLean provided evidence to that effect thorough his disclosures of racist bullying and security violations by the woman who reported his participation in the social media chat. Appx144.

---

[7] In March 2016, the agency opened its first racist video allegation investigation and closed it on June 2016 without charges. Appx12. On July 2017 the agency opened its second probe, Flying Pigs, and closed it on January 2018 which produced the charges for MacLean's removal. In April 2018, the agency opened its third investigation (DCA airport vehicle-ramming bollards post on Twitter) and closed it without charges. Appx48. In August 2018, the agency opened its fourth investigation which produced no charges; furthermore, the agency provided copies of the 7 witnesses' NDAs.

Even if the parties above had innocent motives, however, there was simply no excuse for those in authority to use their allegations as a pretext to investigate MacLean because of his continued disclosures about agency mission breakdowns endangering the public. This Court has explained that the motives of those who order and conduct investigations must be examined. *Miller*, 842 F.3d at 1262.

Here the Board did not discuss whether the agency investigators' retaliatory motives were exposed by tactics such as highly slanted questions, sustained pressure to testify against MacLean and similar pressure not to provide testimony supporting MacLean. MacLean Petition for Review at 17, 26, 27, 30, and 40.

Most fundamental, the Board ignored the almost simultaneous timing of protected speech and the beginning of serial investigations. Again, in other proceedings the Board has respected this doctrine that it ignored for MacLean. In *Young, supra* at ** 7, 9-11, 15-18, 20 and 31, the Board explained that close timing between protected activity and opening an investigation creates an inference of pretext for a retaliatory investigation which requires the agency to prove by clear and convincing evidence that it would have opened the investigation in the absence of protected conduct. The Board ignored its duty to consider the close timing between OSC disclosures and serial investigations of MacLean.

The Board disagreed with MacLean's contention that the agency was

"obsessed" with trying to remove him. Appx235-236. It only could come to that conclusion by ignoring all of MacLean's protected activity that was most threatening to the agency; all the harassment in an incessant, hostile work environment, serial retaliatory investigations and repeated investigative misconduct that tainted the second investigation.

## CONCLUSION

For the foregoing reasons, *amici* respectfully urge this Court to reverse the November 2024 decision of the Board in the proceedings below.

Respectfully submitted,

Date: June 4, 2025

*/s/Elisabeth R. Connell*

Elisabeth R. Connell
Government Accountability Project
1612 K Street NW, Suite 808
Washington, DC 20006
(202) 449-6040
elisabethc@whistleblower.org

Counsel of Record for *Amici Curiae*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(c), I hereby certify that:

This brief complies with the word count limitation of Fed. R. App. P. 32(a)(7)(b) because this brief contains 5157 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word (11th ed) and Times New Roman 14-point font.

*/s/Elisabeth R. Connell*
Elisabeth R. Connell

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of this Court through the CM/ECF system, which will serve all parties automatically.

Date: June 4, 2025

*/s/Elisabeth R. Connell*
Elisabeth R. Connell